IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| LORRIANE Y. HOLLINS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 2:04cv1148-C |
| | ) | WO |
| JO ANNE B. BARNHART, | ) | |
| Commissioner of Social Security | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

**I. Introduction**

The plaintiff, Lorriane Hollins ("Hollins"), applied for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. § 1381 et seq., alleging that she was unable to work because of a disability. Her application was denied at the initial administrative level. The plaintiff then requested and received a hearing before an Administrative Law Judge ("ALJ"). Following the hearing, the ALJ also denied the claim. The Appeals Council rejected a subsequent request for review. The ALJ's decision consequently became the final decision of the Commissioner of Social Security (Commissioner).[1] *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). The case is now before the court for review pursuant to 42 U.S.C. §§ 405 (g) and 1631(c)(3). Pursuant to 28 U.S.C. § 636(c)(1) and M.D. Ala. LR 73.1, the parties have consented to the United

---

[1] Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub.L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

States Magistrate Judge conducting all proceedings in this case and ordering the entry of final judgment.  Based on the court's review of the record in this case and the briefs of the parties, the court concludes that the decision of the Commissioner should be reversed and this case remanded to the Commissioner for further proceedings.

## II.  Standard of Review

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person is unable to

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . .

To make this determination,[2] the Commissioner employs a five-step, sequential evaluation process.  *See* 20 C.F.R. §§ 404.1520, 416.920.

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability.  A negative answer to any question, other than step three, leads to a determination of "not disabled."

---

[2]  A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).³

The standard of review of the Commissioner's decision is a limited one. This court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A reviewing court may not look only to those parts of the record which support the decision of the ALJ but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986).

> [The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

### III. The Issues

**A. Introduction.** Hollins was 36 years old at the time of the hearing before the ALJ. (R.41). She has a General Equivalency Diploma ("GED"). (*Id*.). Following the hearing, the ALJ concluded that the plaintiff has severe impairments of hypertension, paroxysmal

---

³ *McDaniel v. Bowen*, 800 F.2d 1026 (11th Cir. 1986) is a supplemental security income case (SSI). The same sequence applies to disability insurance benefits. Cases arising under Title II are appropriately cited as authority in Title XVI cases. *See e.g. Ware v. Schweiker*, 651 F.2d 408 (5th Cir. 1981) (Unit A).

3

supraventricular tachycardia ("PSVT"), gastroesophageal reflux disease ("GERD"), migraine headaches, asthma, and chronic low back pain. (R. 23). The ALJ also concluded that Hollins' dysthymia disorder is non-severe because she

> has sought no ongoing treatment for this condition other than being prescribed "nerve" medication prescribed from a family physician, and there is no evidence that this condition has resulted in more than a slight impact on claimant's ability to perform work-related functions.

(R. 23). The ALJ concluded that Hollins had no past relevant work. (R. 25). Relying strictly on the Medical-Vocational Guidelines, 20 C.F.R. Pt. 404, Subpt. P., App. 2, the ALJ concluded that Hollins was not disabled. (*Id*.).

**B. Plaintiff's Claims.** Hollins presents three issues for the Court's review. As stated by Hollins, they are as follows:

1. Whether the ALJ erred as a matter of law by relying solely on the Medical Vocational Guidelines in the presence of severe non-exertional impairments.

2. Whether the ALJ failed to properly apply the pain standard.

3. Whether the ALJ failed to properly evaluate Ms. Hollins' depression.

(Pl's Br. at 1).

Specifically, Hollins argues that the ALJ should not have applied the medical-vocational guidelines ("grids") to her because she suffers from severe non-exertional impairments which preclude application of the grids. In addition, Hollins contends that the ALJ failed to properly discredit her pain testimony because he did not articulate explicit reasons for rejecting her testimony. Finally, Hollins contends that she met her burden of

establishing her depression constitutes a severe impairment.

## IV. Discussion

The plaintiff raises several issues and arguments related to this court's ultimate inquiry of whether the Commissioner's disability decision is supported by the proper legal standards and substantial evidence. *See Bridges v. Bowen*, 815 F.2d 622 (11th Cir. 1987). The court first addresses Hollins' argument regarding her depression.

**A.   The ALJ failed to properly evaluate the severity of Ms. Hollins' depression**.  The plaintiff argues that the ALJ erred in finding that her depression did not constitute a "severe" impairment.  As a result, the ALJ did not consider the effect of her depression on her ability to work.  The severity step is a threshold inquiry which allows only "claims based on the most trivial impairment to be rejected."  *McDaniel,* 800 F.2d at 1031. Indeed, a severe impairment is one that is more than "a slight abnormality or combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work."  *Bowen v. Yuckert*, 482 U.S. 137, 154 n. 12 (1987) (citing with approval Social Security Ruling 85-28 at 37a.)

A physical or mental impairment is defined as "an impairment that results from anatomical, physiological or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."   42 U.S.C. § 1382c(a)(3)(c).  The plaintiff has the "burden of showing her impairment is 'severe' within the meaning of the Act."  *McDaniel,* 800 F.2d at 1030 - 31 ("Unless a claimant can prove,

5

as early as step two, that she is suffering from a severe impairment, she will be denied disability benefits.")

> The ALJ determined that Hollins' dysthymia disorder was non-severe because she
>
> has sought no ongoing treatment for this condition other than being prescribed "nerve" medication prescribed from a family physician, and there is no evidence that this condition has resulted in more than a slight impact on claimant's ability to perform work-related functions.

(R. 23).  After carefully reviewing the medical records, the court concludes that the ALJ erred in failing to fully develop the record regarding the plaintiff's mental impairment by not inquiring further into her treatment or the reasons for her lack of mental health treatment.

An ALJ has a duty to fully and fairly develop the record.  *See e.g. Lucas v. Sullivan*, 918 F.2d 1567 (11th Cir. 1990); *See also, Kelley v. Heckler*, 761 F.2d 1538 (11th Cir. 1985). The ALJ must conscientiously probe into, inquire of and explore all relevant facts to elicit both favorable and unfavorable facts for review.  *Cowart v. Schweiker,* 662 F.2d 731, 735-36 (11th Cir. 1981).  The ALJ concluded that Hollins' depression was not severe, in part because of her lack of treatment from a mental health professional.  (R. 23).  First, there is no legal requirement that Hollins be treated by a mental health professional before her depression can be considered a severe impairment.  In other words, whether a person has psychological abnormalities is not dependent upon recognition only by a psychological or psychiatric expert.  Indeed, the ALJ's conclusion is tantamount to him substituting his opinion for that of Hollins' treating physician.  It is undisputed that Hollins has been treated for depression by Dr. Gilliam, her treating physician, since 1999.  In addition, his conclusion that Hollins

is suffering from depression has been confirmed by at least two other physicians. Consequently, the mere fact that Hollins has not seen a mental health counselor does not support a conclusion that her depression is not a severe impairment.

The law is well-settled; the opinion of a claimant's treating physician must be accorded substantial weight unless good cause exists for not doing so. *Jones v. Bowen*, 810 F.2d 1001, 1005 (11th Cir. 1986); *Broughton v. Heckler*, 776 F.2d 960, 961 (11th Cir. 1985). The weight afforded to a physician's conclusory statements depends upon the extent to which they are supported by clinical or laboratory findings and are consistent with other evidence as to the claimant's impairments. *Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986). The ALJ may reject the opinion of any physician when the evidence supports a contrary conclusion. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1240 (11th Cir. 1983). The ALJ must articulate the weight given to a treating physician's opinion and must articulate any reasons for discounting the opinion. *Schnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987).

On October 16, 1999, Dr. Robert Gilliam, Hollins' treating physician, diagnosed her as suffering from headaches "most likely secondary to stress and depression." (R. 299). He prescribed Cephadyne for her headaches and Elavil for her depression. (*Id.*). On March 13, 2001, Dr. Gilliam opined that Hollins was "primarily depressed" and if he could "treat the depression the headaches should improve as well." (R. 255). He increased her dosage of Elavil. (*Id.*) On August 14, 2001, Dr. Gilliam noted that Hollins was suffering from depression and that she cried easily. (R. 245). He increased her Elavil to 50 mg. (*Id.*). On

June 30, 2002, Hollins was admitted to Lakeview Community Hospital for syncope, severe headaches and hypertension. (R. 156). At that time, the treating physician noted that "[h]er level of depression was apparent during the hospitalization." (R. 157). He further noted that "there may be a significant element of depression at interplay with her syncope." (R. 161).

Dr. Gilliam referred Hollins to neurologist Dr. Dilullo because of her constant headaches. On June 27, 2002, Hollins under went a neurological consultation with Dr. Dilullo. (R. 398). Dr. Dilullo opined that Hollins was suffering from "mixed headache disorder" and that her "coexisting depression" "may be playing a role." (R. 400). He also suggested mental health treatment.

> Because of coexisting depression, evaluation by community mental health may be helpful in alleviating some of her headache symptoms. . . . [A]gain I believe that supportive psychotherapy may be helpful in alleviating depression and treating some of her headache symptoms.

(*Id*.).

On July 10, 2002, Dr. Gilliam's notes indicate that Dr. Dilullo and the hospital physician were concerned about Hollins' depression. (R. 217). "Both the doctor who had her in the hospital and Dr. Dilullo felt that the patient had a component of depression possibly causing some of her symptoms." On August 7, 2002, Dr. Gilliam noted that Hollins was nervous and had a flat affect. (R. 212).

The ALJ did not consider Dr. Gilliam's opinions regarding Hollins' depression, apparently simply because Dr. Gilliam is Hollins' family physician and not a mental health professional. In addition, the ALJ failed to provide explicit reasons for discrediting Dr.

Gilliam's opinions. Consequently, the court concludes that the ALJ's determination that Hollins' depression is not a severe impairment is not supported by substantial evidence. In fact, that conclusion is contrary to the evidence.

Furthermore, the ALJ failed to consider whether the plaintiff's financial condition played a role in her failure to seek mental health treatment nor did the ALJ conduct a searching inquiry into the plaintiff's financial condition as it related to any mental health treatment, even though the record indicates her inability to afford medications. (R.402, 424, 427). Although the ALJ refers to the plaintiff's lack of treatment, it appears that he simply assumed that the plaintiff's lack of mental health treatment was not due to an inability to pay. "The medical evidence is replete with indications that claimant has not been fully compliant with her prescribed medication regimen, often going extended periods without any medication, although the record indicates claimant has had available resources." (R. 24). The problem with the ALJ's gratuitous comment about the plaintiff's resources is that there is no evidence in the record to support it.

Although it is readily apparent from the record that the plaintiff's financial condition was a factor in obtaining medical treatment, the ALJ did not conduct a searching inquiry into the plaintiff's financial condition as it related to her medical treatment. For example, the medical records indicate that Medicaid refused to pay for her prescription for Nexium. (R. 402). In addition, Hollins was given samples of her prescribed medications numerous times. (R. 200, 205, 212, 213, 217, 410, 414, 415, 424, 426). On one occasion, Dr. Gilliam noted

9

that Hollins was unable to afford some of her medications so he authorized giving her samples. (R. 424). On another occasion, Dr. Gilliam noted that Hollins had no insurance to pay for a cardiology referral. (R. 427).

On February 24, 2003, Hollins underwent a psychological evaluation by Dr. Doug McKeown, at the request of the Commissioner. (R. 258-361). Dr. McKeown diagnosed Hollins as suffering from chronic dysthymic disorder, possible post-traumatic stress disorder, and a history of back pain and episodes of passing out. (R. 360). Dr. McKeown recommended Hollins pursue mental health treatment.

> The claimant has been referred to consider seeking mental health treatment at a mental health facility or with a mental health professional to perhaps obtain greater relief from her depressive symptomatology.

(R. 361).

Notwithstanding the lack of evidence regarding mental health treatment, the ALJ asked the plaintiff only one question regarding mental health treatment at her administrative hearing.

> Q: Are you receiving any treatment for nerves or depression symptoms?
>
> A: I applied to be evaluated at Southeast. I filled out the card where I can go 36 to 48 hours without any sleep at all but they never called me or wrote me back. I was asking them for help.

(R. 60). Hollins also testified during the hearing that Dr. Gilliam gives her samples of her medications and her mother purchases her asthma inhaler for her. (R. 47). She also indicated that at some point, she had been disqualified from a Medicaid program, and was only recently

approved for a different program. (R. 47).  Although the medical records clearly demonstrate that at least three doctors suggested Hollins seek mental health treatment, the ALJ did not further inquire about whether the plaintiff could afford mental health treatment or why she had not sought mental health treatment.

While failure to seek treatment is a legitimate basis to discredit the testimony of a claimant, it is the law in this circuit that poverty excuses non-compliance with prescribed medical treatment or the failure to seek treatment.  *Dawkins v. Bowen*, 848 F.2d 1211 (11th Cir. 1988).  In this regard, the ALJ failed in his duty to develop the record.

> Social security disability proceedings are inquisitorial rather than adversarial. *See Sims v. Apfel*, 530 U.S. 103, 120 S.Ct. 2080, 2085, 147 L.Ed.2d 80 (2000) (*citing Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971)).  The SSA is perhaps the best example of an agency that is not based to a significant extent on the judicial model of decisionmaking.  It has replaced normal adversary procedure with an investigatory model, where it is the duty of the ALJ to investigate the facts and develop the arguments both for and against granting benefits; review by the Appeals Council is similarly broad. *Id*.  The regulations also make the nature of the SSA proceedings quite clear.  They expressly provide that the SSA "conducts the administrative review process in an informal, nonadversary manner."  20 C.F.R. § 404.900(b).

*Crawford & Co. v. Apfel*, 235 F.3d 1298, 1304 (11th Cir. 2000).  Thus, the court concludes that the ALJ failed in his independent duty to fully and fairly develop the record in this case, and, thus, his determination that Hollins' depression does not constitute a severe impairment is not supported by substantial evidence.

**B.     The ALJ erred as a matter of law by relying solely on the Medical Vocational Guidelines in the presence of severe non-exertional impairments.**  Hollins

alleges that the ALJ erred by relying solely on the grids in the presence of her non-exertional impairments. The ALJ concluded that Hollins has the residual functional capacity to perform light work. (R. 25)

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. . . . Because the claimant has the exertional capacity to perform all of the requirements of light work, and considering claimant's age, education, and work experience, a finding of "not disabled" is supported by application of Medical-Vocational Rule 202.20.

(R. 25).

Exclusive reliance on the grids is appropriate only when a claimant has no non-exertional impairments that significantly limit the claimant's basic work activities. *Foote v. Chater*, 67 F.3d 1553 (11th Cir. 1995); *Sryock v. Heckler*, 764 F.2d 834 (11th Cir. 1985). "[W]hen both exertional and nonexertional limitations affect a claimant's ability to work, the ALJ should make a specific finding as to whether the nonexertional limitations are severe enough to preclude a wide range of employment at the given work capacity level indicated by the exertional limitations." *Sryock*, 764 F.2d at 836.

In this case, the ALJ concluded that Hollins has severe non-exertional impairments[4] of paroxysmal supraventricular tachycardia, migraine headaches, asthma and chronic low

---

[4] "A non-exertional impairment is one that significantly impairs the claimant's ability to meet the demands of a job other than the strength demands." *Wolfe v. Chater*, 86 F.3d 1072, 1077 n.5 (11th Cir. 1996)

back pain.[5] (R. 23). However, in applying the grids, it appears that the ALJ merely assumed that the plaintiff's nonexertional impairments did not significantly limit her ability to perform a full range of light work. The ALJ engaged in no analysis of this issue at all.

Moreover, as already discussed, the ALJ failed to properly consider the impact of Hollins' depression on her ability to work. Consequently, the ALJ's sole reliance on the grids was error. On remand, the ALJ may consider utilizing a vocational expert to assist him in determining whether Hollins is disabled. Accordingly, the court is compelled to conclude that the ALJ's conclusion that Hollins' ability to perform light work is not supported on the record.

## V. Conclusion

Accordingly, this case will be reversed and remanded to the Commissioner for further proceedings consistent with this opinion.[6]

A separate order will be entered.

Done this 21st day of June, 2005.

                                             /s/Charles S. Coody
                                             CHARLES S. COODY
                                             CHIEF UNITED STATES MAGISTRATE JUDGE

---

[5] Pain, of course, has long been recognized as a non-exertional impairment. *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). So is asthma. *See e.g. Hicks v. Comm'r of Soc. Sec.*, 105 Fed. Appx. 757, 2004 WL 1687945 (6th Cir. 2004).

[6] Because the court concludes that the ALJ erred as a matter of law, and, thus, this case is due to be remanded for further proceedings, the court pretermits discussion of the plaintiff's argument regarding the proper application of the pain standard.